IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THERON JOHNNY MAXTON, | : | CIVIL ACTION NO. **1:CV-13-0713** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| J. THOMAS, WARDEN, *et al.,* | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.      BACKGROUND.

On March 19, 2013, Plaintiff Theron Johnny Maxton, an inmate confined in  the United

States Penitentiary located in Lewisburg, Pennsylvania ("USP-Lewisburg"), filed, *pro se*, this instant

*Bivens* civil rights action pursuant to 28 U.S.C. § 1331.[1]  (Doc. 1). Plaintiff submitted a 2-page form

Complaint with  handwritten responses filling in the  numbered queries.  On that same date,

Plaintiff also filed a Motion for Leave to Proceed *in forma pauperis*.  (Doc. 2).  On March 25, 2013,

Plaintiff filed a brief seemingly in support of his request for relief in his Complaint for the Court to

order Defendants to place him in Protective Custody and to single cell him at USP-Lewisburg.[2]

---

[1] *See Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91
S.Ct. 1999 (1971).  Plaintiff's actions fall within 28 U.S.C. § 1331 ("The district courts shall have
original jurisdiction of <u>all</u> civil actions arising under the Constitution, laws or treaties of the
United States." (Emphasis added).
     Plaintiff's Complaint is a *Bivens* actions under §1331 since he alleges federal officials
violated his constitutional rights. *See Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894
(1978).

[2] Plaintiff's Doc. 7 brief was incorrectly docketed by the Clerk of Court as a Motion for
Protective Custody even though Plaintiff clearly labeled his filing as "Plaintiff Brief."
      Regardless, as discussed below, it is clear that Plaintiff has not yet exhausted his BOP
administrative remedies with respect to his request to be placed in protective custody.

(Doc. 7). Plaintiff also indicates in his Doc. 7 filing that he was recently transferred to USP-Lewisburg on February 18, 2013, from Colorado.

Plaintiff Maxton also filed a prior *Bivens* civil rights action with this Court, on March 12, 2013, in Civil No. 13-0658, M.D. Pa., but he did not yet file his *in forma pauperis* motion or pay the filing fee in his Civil No. 13-0658 case so it is not ready to be screened. A 30-Day Administrative Order was issued in Plaintiff 's Civil No. 13-0658 case on March 18, 2013.

This Court has jurisdiction over Plaintiff's *Bivens* civil rights action pursuant to 28 U.S.C. § 1331. *See Butz*, *supra*.

We will now screen Plaintiff Maxton's Complaint as we are obliged to do under the PLRA. *See Abdul-Akbar v. McKelvie*, 239 F. 3d 307, 314 (3d Cir. 2001); *Banks v. County of Allegheny*, 568 F.Supp.2d 579, 589 (W.D. Pa. 2008).[3]

## II.     STANDARDS OF REVIEW.

### A.     PLRA

The Prison Litigation Reform Act of 1995,[4] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Specifically, § 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any
> portion thereof, that may have been paid, the
> court shall dismiss the case at any time if the
> court determines that (A) the allegation of
> poverty is untrue; or (B) the action or appeal

---

[3]We have been assigned his case for pre-trial matters.

[4]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

(i) is frivolous or malicious; (ii) fails to state a
claim on which relief may be granted; or (iii)
seeks monetary relief against a defendant who
is immune from such relief.

## B.      *BIVENS* STANDARD

A *Bivens* civil rights action under § 1331 has the same standards as does a § 1983 civil rights

action.  *See Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486,

1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200, n. 16 (M.D. Pa. 1992); *Mitchell*

*v. Dodrill*, 696 F.Supp. 2d 454, 457, n. 1 (M.D. Pa. 2010)(citing *Egervary v. Young*, 366 F.3d 238,

246 (3d Cir. 2004)).  To state a claim under *Bivens*, Plaintiff must allege that he was deprived of a

federal right by a person who was acting under color of federal law.  *See Young v. Keohane*, 809

F.Supp. at 1199; *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988).

It is well established that personal liability in a civil rights action cannot be imposed upon a

state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362

(1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976).  It is also

well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional

deprivations is a requirement in a civil rights case and that a complaint must allege such personal

involvement. *Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003).  Each named defendant

must be shown, through the complaint's allegations, to have been personally involved in the events

or occurrences upon which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v.*

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

A defendant in a civil rights action must have personal involvement
in the alleged wrongs . . . . [P]ersonal involvement can be shown
through allegations of personal direction or of actual knowledge and

acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

*See also Fisher v. Matthews,* –F.Supp.2d–, 2011 WL 1982920, * 23 (M.D. Pa.) *(citing Rode, supra).*

The Court uses the same standard to screen a complaint under the PLRA as it does for a

12(b)(6) motion to dismiss. *See Banks v. County of Allegheny*, 568 F.Supp.2d at 588.     **C.**

**MOTION TO DISMISS STANDARD**

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court

stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with

its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " Guirguis v. Movers Specialty Services, Inc., No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not precedential).

III.    **COMPLAINT ALLEGATIONS**.

As stated, on March 19, 2013, Plaintiff filed this instant *Bivens* civil rights action, pursuant to §1331, against the following Defendants, each of whom is an employee at USP-Lewisburg : (1) J. J. Thomas, Warden; (2) F. Entzel, Captain; (3) unnamed SIS Officials; and (4) R. Bingaham, Counselor.  (Doc. 1, p. 1).  Plaintiff's Statement of Claim and Request for Relief each consist of one handwritten paragraph.  (Doc. 1, p. 2).  Plaintiff alleges that his Eighth Amendment conditions of confinement rights have been violated because he has been exposed to tear gas and because he has been placed, "out of retaliation," in a cell with a younger inmate "to get me kill[ed]."  (*Id.*). Plaintiff also claims that he has been denied medical care for his asthma and prostate cancer. (*Id.*). Further, Plaintiff alleges that despite knowing he has asthma, unnamed officers on March 7 and 8, 2013, "tired to kill [him] with gas they shot."  As relief, Plaintiff requests that the Court order Defendants to place him  by himself in a cell, *i.e.,* single celled, and to place in protective custody. Plaintiff also requests that the Court order Defendants not to shoot gas around him at any time, and

to order that he be seen by a urologist for his prostate cancer and by a doctor for his asthma problems.  (*Id*.).[5]  Thus, Plaintiff only requests injunctive relief.

Significantly, Plaintiff does not state whether he has exhausted his recent claims *via* the BOP's  administrative remedy process.[6]     As mentioned, in his Doc. 7 filing, Plaintiff states that he was recently transferred to USP-Lewisburg on February 18, 2013, and his present claims, at least in part, arose on March 7 and 8, 2013, twelve (12) days before he filed his present Complaint.

---

[5]With regards to Plaintiff's Protective Custody request, we find that the Plaintiff is requesting relief in the form of Court intervention and management while he is in prison, *i.e.,* directing USP-Lewisburg as to what custody level to place Plaintiff in and where he should be housed in USP-Lewisburg.  Plaintiff has no constitutional right to any particular classification or custody level in prison.  *See Wilson v. Horn*, 971 F.Supp. 943, 947 (E.D. Pa. 1997).  Therefore, the Court will not generally interfere with prison administration matters such as USP-Lewisburg's decision as to what custody level, unit or facility is proper for Plaintiff.  The Court should give significant deference to judgments of prison officials regarding prison regulations and prison administration.  *See Fraise v. Terhune*, 283 F.3d 506 (3d Cir. 2002); *See Levi v. Ebbert*, 2009 WL 2169171, *6 (M.D. Pa.).

[6]In *Banks  v. Lappin*, 2009 WL 2486341, *3  (M.D. Pa.), the Court stated:

Prisoners must comply with the PLRA exhaustion requirement as to any claim that arises in the prison setting, regardless of the nature of the claim or the relief sought. *See Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Furthermor**e,** courts are not permitted to "excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000) (quoting *Beeson v. Fishkill Corr. Facility,* 28 F.Supp.2d 884, 894-95 (S.D.N.Y.1998)); *see also Woodford v. Ngo,* 548 U.S. 81, 92-94, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (explaining that the PLRA mandates that inmates "properly" exhaust their claims before filing suit in federal court).
Plaintiff was required to exhaust his BOP administrative remedies before he filed his instant action.  *See Walker v. Health Services, Lewisburg Penitentiary*, 2007 WL 1395361, * 3 (M.D. Pa.).

## IV.    DISCUSSION.

Based on the facts provided in his Complaint filed on March 19, 2013, and in his Doc. 7 brief in support of his Protective Custody request, Plaintiff is construed as alleging that his Eighth Amendment conditions of confinement and medical care rights have been violated.

*1.  Failure to Exhaust BOP Administrative Remedies*

As mentioned, the face of his Complaint as well as from his Doc. 7 brief, it is clear that Plaintiff has failed to exhaust his BOP administrative remedies with respect to any of his instant Eighth Amendment claims.  As mentioned, Plaintiff indicates that he was recently transferred to USP-Lewisburg on February 18, 2013, and his present claims arose on March 7 and 8, 2013, just twelve (12) days before he filed his present Complaint.

A prisoner is barred from bringing a civil rights action in federal court "until such administrative remedies as are available have been exhausted."  42 U.S.C. §1997e(a).  In screening Plaintiff's Complaint under the PLRA, the Court can *sua sponte* dismiss without prejudice Plaintiff's action regarding his constitutional claims which are not yet exhausted because his Complaint makes clear that he has not commenced the BOP administrative remedy process. (Doc. 1, p. 1).  *See Jones v. Lorady*, 2011 WL 2461982 (M.D. Pa. 6-17-11)(citing *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10)).

In *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10), the Third Circuit  stated:

> Failure to exhaust and the statute of limitations are similar "in the abstract": they are both affirmative defenses. But, a court may nonetheless dismiss a suit for failing to state a claim when the limitations defense is obvious from the face of the complaint. We see no reason why a district court, when screening a complaint pursuant to the PLRA, may not *sua sponte* dismiss a suit whose allegations make clear that the action is not timely. Indeed, other Courts of Appeals have recognized

that dismissal under these circumstances is appropriate. *See, e.g., Fogle v. Pierson,* 435 F.3d 1252, 1258 (10th Cir.2006); *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir.2001); *Nasim v. Warden, Maryland House of Corr.,* 64 F.3d 951, 956 (4th Cir.1995) (en banc); *Pino v. Ryan,* 49 F.3d 51, 53-54 (2d Cir.1995).FN4 We agree that when a statute-of-limitations defense is apparent from the face of the complaint, a court may sua sponte dismiss the complaint pursuant to 28 U.S.C. §1915 or 28 U.S.C. § 1915A.

*See Robinson v. Varano,* Civil No. 10-2131, M.D. Pa.; *Jones, supra.*

As the Courts have repeatedly held, it is well-settled that the Plaintiff inmate must exhaust his administrative remedies prior to filing a civil rights suit. *See Mitchell, supra*; *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n. 9 (3d Cir. 2002). In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prison conditions, including § 1983 actions or actions brought pursuant to any other federal law, including this *Bivens* action. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.; Woodford v. Ngo,* 126 S Ct. 2378 (2006); *Fortune v. Bitner*, 2006 WL 2769158, *7 (M.D.Pa.)("The PLRA mandates that inmates 'properly' exhaust administrative remedies before filing suit in federal court.")(citation omitted). Further, the Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Fortune v. Bitner*, 2006 WL 2769158, *7.

"A prisoner must exhaust all available administrative remedies before initiating a federal lawsuit." *Lombardi v. Pugh*, 2009 WL 1649908, *3(M.D. Pa. 6-9-09)(citation omitted). Further, "the exhaustion requirement is not satisfied if the inmate files an action in the district court prior to

completing the administrative remedy process." *Id.*(citation omitted); *See also Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64(Court stated that "most circuit courts are in agreement that a prisoner may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies *after* initiating suit in federal court.")(emphasis original)(citations omitted).

The Court in *Mitchell v. Dodrill*, 696 F.Supp.2d at 465, stated:

> The United States Court of Appeals for the Third Circuit has not issued a precedential opinion on the issue. However, in a non-precedential opinion, the Court found that the lower court had properly dismissed the plaintiff's complaint because his exhaustion attempt took place after he filed his *Bivens* claim. *Oriakhi v. United States,* 165 Fed.Appx. 991, 993 (3d Cir.2006) (not precedential). "[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred." *Id.* (quoting *Johnson,* 340 F.3d at 627–28). The Court further stated that "[t]he fact that [the plaintiff] completed the administrative review process before the District Court reached the exhaustion question is of no consequence. Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Oriakhi,* 165 Fed.Appx. at 993 (citing *Johnson,* 340 F.3d at 627–28). (not precedential).

The Third Circuit has repeatedly stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies prior to filing suit in federal court." *Banks v. Roberts*, 2007 WL 3096585, *1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted); *Ahmed v. Dragovich*, 297 F.3d at 209 & n. 9 . The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Banks v. Roberts*, 2007 WL 3096585, *1; *Spruill v. Gillis,* 372 F. 3d 218, 228-230 (3d Cir. 2004); *see also Nyuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).

We take judicial notice that the BOP had an administrative remedy policy at USP-Lewisburg during the relevant times of this case. *See Cooper v. Sniezek*, 2010 WL 3528848, *7-*8 (M.D. Pa. 9-7-10); *Mitchell v. Dodrill*, 696 F.Supp.2d at 463-64. As stated, it is clear from the face of Plaintiff's instant Complaint and his Doc. 7 filing that he has not exhausted his BOP administrative remedies with respect to any of his claims. Plaintiff also seems to indicate that he is excused from exhaustion since the only remedies for his claims he is seeking is injunctive relief. (Doc 1, p. 2). However, as discussed herein, exhaustion is required regardless of what relief the inmate seeks.

The *Cooper* Court, 2010 WL 3528848, *7-*8, stated as follows:

> An inmate may challenge any aspect of his or her confinement using the BOP's administrative remedy procedure, which is set forth at 28 C.F.R. §§ 542 *et seq.* An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. *Id.* at § 542.14(a). The inmate has twenty (20) days following the date on which the basis for the complaint occurred in which to complete informal resolution and submit a formal written administrative remedy request. *Id.* The procedure further provides that an extension may be allowed where an inmate demonstrates a valid reasons for delay. *Id.* at § 542.14(b). The regulation states, in part:

> Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request of Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request of Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

*Id.* If dissatisfied with the response to the formal written request, the inmate may then appeal an adverse decision to the Regional Office and the Central Office of BOP's General Counsel. *Id.* at §§ 542.15(a) and 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. *Id.* at § 542.15(a).

The *Cooper* Court also stated:

A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process. *See Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). "[I]t is beyond the power ... of any ... [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000) (quoting *Beeson v. Fishkill Corr. Facility,* 28 F.Supp.2d 884, 894-95 (S.D.N.Y.1998) (citing *Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis,* 204 F.3d at 71. The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo,* 548 U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."*Id.* at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 93 (quoting *Nussle,* 534 U.S. at 525). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis,* 372 F.3d 218, 227-32 (3d Cir.2004).

2010 WL 3528848, *7.

Thus, we first address the threshold question of whether Plaintiff has exhausted all available BOP administrative remedies and conclude that the instant Complaint clearly shows Plaintiff has not, in fact, exhausted any of his available BOP administrative remedies before

filing his Complaint. (Doc. 1). Also, based on the fact that Plaintiff filed his instant Complaint on March 19, 2013, and that a portion of his constitutional claims arose on March 7 and 8, 2013, it is apparent that Plaintiff could not have fully exhausted all of his available BOP administrative remedies before he filed his Complaint. Also, Plaintiff does not state in his Complaint whether he filed a grievance and whether he exhausted the available BOP administrative process regarding his Eighth Amendment claims.

Thus, it is apparent from Plaintiff's pleading that he has not yet commenced the available BOP administrative process, which would entail review by staff, an on-site grievance coordinator, the warden, as well as the BOP central office. (Doc. 1 & Doc. 7). We find that Plaintiff's own filings compel the conclusion that he has not yet exhausted all of his BOP administrative remedies.

Additionally, Plaintiff has remedies available to seek protective custody status by the BOP, *i.e.,* by filing a request for protective custody. The SIS Department of USP-Lewisburg would then conduct a protective custody investigation into Plaintiff's claims as to why he thought he required such custody status. Plaintiff can then pursue his request for protective custody *via* the BOP administrative remedy process. *See Crumbly v. Bledsoe*, 2009 WL 2877034 (M.D. Pa. Sept. 2, 2009).

Therefore, we will recommend that the Plaintiff's Complaint be dismissed without prejudice pending completion of fully exhausting the BOP administrative remedy process with respect to each one of his constitutional claims.

12

### 2. *Failure to* State *Constitutional Claims*

Moreover, Plaintiff has failed to properly raise his constitutional claims because he generally alleges that "Defendants" have violated these Eighth Amendment rights, without specifically stating with factual sufficiency which Defendant has violated each of these rights and what each Defendant personally did to violate these rights. Therefore, Plaintiff has failed to properly allege the personal involvement of all Defendants against whom he has filed his Complaint. To reiterate, in order to properly raise a constitutional claim under *Bivens,* an inmate plaintiff must allege the following: (1) that the conduct complained of was committed by a person acting under color of federal law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *See Mitchell v. Dodrill*, *supra*.

Furthermore, as stated, it is well-established that personal liability in a civil rights action cannot be imposed upon a state official based on a theory of *respondeat superior*. *See Hampton v. Holmesburg Prison Officials*, 1546 F.2d at 1082. Therefore, to the extent that Plaintiff is attempting to raise his claims against supervisory Defendants Thomas and Entzel based on the theory of *respondeat superior*, he cannot successfully do so.

Furthermore, in addition to failing to allege personal involvement of any Defendant named in his Complaint, Plaintiff has failed to properly allege the elements of both an Eighth Amendment conditions of confinement claim and an Eighth Amendment denial of medical care claim.

In *Mitchell v. Dodrill*, 696 F.Supp.2d at 466, the Court stated the following:

"The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). However, the Eighth Amendment does not mandate that prisons be free of discomfort. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). No static test determines whether conditions of confinement are "cruel and unusual." These terms must "draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society." *Tillery v. Owens*, 719 F. Supp. 1256, 1261 (W.D. Pa. 1989).

> To establish an Eighth Amendment claim, Mitchell must show that he has been deprived of "the minimal civilized measure of life's necessities." *Griffin v. Vaughn,* 112 F.3d 703, 709 (3d. Cir. 1997) (quoting *Young v. Quinlan*, 960 F.2d 351, 359 (3d. Cir. 1992)). In reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes*, 452 U.S. at 362-363. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained by the
> United States Supreme Court:

>> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not  do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single
>> identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific

deprivation of single human need exists. *Wilson v. Seiter*, 501 U.S. 294, 304-305 (1991).

In addition to showing conditions that pose a significant risk of serious harm, the inmate must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Id. at 298*. As described by the Supreme Court in *Farmer,* the standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety. *Farmer,* 511 U.S. at 837. The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id.* at 842.

Therefore, in order to properly allege an Eighth Amendment conditions of confinement claim, a plaintiff "must meet two requirements: (1) 'the deprivation must be objectively, sufficiently serious;' and (2) the 'prison official must have a sufficiently culpable state of mind.'" *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d. Cir. 2001) (quoting *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970). Furthermore, a prison official's "act or omission must result in the denial of 'the minimal civilized measure of life's necessities'" and the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw that inference." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970.

Moreover, Plaintiff Maxton also requests the Court to order Defendants to place him in protective custody and to place him in a single cell. In *Henry v. Wilson*, 2007 WL 2746717, *5 (W.D. Pa. Sept. 17, 2007), the Court stated:

The Supreme Court specifically has held that double-celling is not prohibited by the Eighth Amendment. *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Plaintiff fails to produce any evidence to demonstrate that the conditions of his confinement in a

double cell with another inmate deprived him of any basic human need. Notwithstanding, he does assert that his confinement in a double cell violates his rights under the Eighth Amendment because of his psychological needs. *Cf. Oden v. Wall,* 69 F.3d 539 (Table), 1995 WL 632381, *2 (7 Cir.1995) (noting that an inmate may have an Eighth Amendment right to a single cell if a serious medical need required it). However, only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. *See Hudson,* 503 U.S. at 9. To demonstrate an extreme deprivation, a prisoner must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions and that a substantial risk of serious harm results from the prisoner's unwilling exposure to the challenged conditions. *Rish v. Johnson,* 131 F.3d 1092, 1096 (4th Cir.1997).

In reference to the detailed facts provided in Plaintiff's Complaint, we find that Plaintiff has failed to properly allege a conditions of confinement claim against Defendants because not only has he failed to allege their personal involvement, but he has also failed to allege what he has been deprived of, that the deprivation was objectively and sufficiently serious, and that Defendants knew of but disregarded an excessive risk to Plaintiff's health or safety. Plaintiff only alleges that by placing him in a cell at USP-Lewisburg with a younger inmate, Defendants are placing his life in imminent danger.

The Third Circuit has held that a plaintiff who has filed an *in forma pauperis* request and whose complaint fails to state a cognizable claim is entitled to amend his pleading. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002). Thus, if a complaint is subject to dismissal for failure to state a claim, the court must first allow Plaintiff leave to amend. *See Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004). Further, "[d]ismissal without leave to amend is justified only on the grounds of bad faith, undue delay,

prejudice, or futility." *Id.* (citations omitted). Because we do not find futility in allowing

Plaintiff to amend his Eighth Amendment conditions of confinement claim, we will

recommend that his Eighth Amendment conditions of confinement claim be dismissed

without prejudice to allow Plaintiff to allege which Defendants were personally involved in

his Eighth Amendment conditions of confinement deprivation, to allege that he was

deprived of one of life's necessities, to allege that the deprivation was objectively and

sufficiently serious, and to allege that the Defendants against whom he is raising his

conditions of confinement claim knew of but disregarded an excessive risk to Plaintiff's

health and safety.  However, we will also recommend that Plaintiff 's present case be

dismissed without prejudice until he exhausts his available BOP administrative remedies

with respect to all of his claims.

Additionally, Plaintiff has failed to properly allege his Eighth Amendment denial of

medical care claim against Defendants. To demonstrate an Eighth Amendment violation, as

the Court stated in *Williams v. Klem*, 2008 WL 4453100, *7 (M.D. Pa.), the Court stated:

> The Eighth Amendment "requires prison officials to provide basic medical
> treatment to those whom it has incarcerated." *Rouse v. Plantier,* 182 F.3d
> 192, 197 (3d Cir.1999) (citing *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct.
> 285, 50 L.Ed.2d 251 (1976)). In order to establish an Eighth Amendment
> medical claim, an inmate must allege acts or omissions by prison officials
> sufficiently harmful to evidence deliberate indifference to a serious
> medical need. *See Spruill v. Gillis,* 372 F.3d 218, 235-36 (3d Cir.2004);
> *Natale v. Camden Cty. Correctional Facility,* 318 F.3d 575, 582 (3d Cir.2003).
> In the context of medical care, the relevant inquiry is whether the
> defendant was: (1) deliberately indifferent (the subjective component) to
> (2) the plaintiff's serious medical needs (the objective component).
> *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346
> (3d Cir.1987); *West v. Keve,* 571 F.2d 158, 161 (3d Cir.1979). A serious
> medical need is one that has been diagnosed by a physician as requiring

treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d at 347. "Additionally, 'if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment.' " *Young v. Kazmerski,* 266 Fed. Appx. 191, 193 (3d Cir.2008) (quoting *Monmouth Cty. Corr. Inst. Inmates,* 834 F.2d at 347).

The Third Circuit further defined deliberate indifference in *Natale v. Camden City Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The Court held:

> A prison official acts with deliberate indifference to an inmate's serious medical needs when "he knows of an disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment... ." *Estelle*, 429 U.S. 97. Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id* at 107. "[A]s long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a civil rights cause of action, and an inmate's disagreement with medical treatment is insufficient to establish a "deliberate indifference." *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

*See also George v. PA DOC*, 2010 WL 936778, *5.

In examining Plaintiff's Eighth Amendment denial of medical care claim against Defendants in light of the aforementioned case law, not only has Plaintiff failed to allege any

Defendants' personal involvement in this claim, but he has also failed to allege the elements of this claim because Plaintiff does not allege that the Defendants acted with deliberate indifference to his serious medical needs. Merely alleging that unnamed Defendants had knowledge of Plaintiff's asthma and prostate cancer is not enough factual information to support an Eighth Amendment denial of medical care claim. It surely does not demonstrate that any named Defendants acted with the requisite deliberate indifference necessary to support such a claim. Therefore, we will respectfully recommend that Plaintiff's Eighth Amendment denial of medical care claim be dismissed without prejudice as we do not find futility in allowing Plaintiff to amend his Eighth Amendment denial of medical care claim against Defendants against whom he is alleging this claim. *See Grayson, supra*. However, as stated, we will also recommend that Plaintiff 's present case be dismissed without prejudice until he exhausts his available BOP administrative remedies with respect to all of his claims.

## V.      RECOMMENDATION.

Based on the foregoing discussion, we respectfully recommend that the Court dismiss Plaintiff's Complaint (**Doc. 1**) without prejudice until he exhausts his available BOP administrative remedies with respect to all of his claims. We also recommend that Plaintiff 's *in forma pauperis* Motion (**Doc. 2**) be granted solely for the purpose of filing this action.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: April 17, 2013**

19

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THERON JOHNNY MAXTON,       :     CIVIL ACTION NO. **1:CV-13-0713**
                                :
           Plaintiff         :     (Judge Caldwell)
                                :
           v.             :     (Magistrate Judge Blewitt)
                                :
J. THOMAS, *et al.*,            :
                                :
          Defendants      :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **April 17, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis
> of that record.  The judge may also receive further evidence, recall

witnesses or recommit the matter to the magistrate judge with
instructions.

Failure to file timely objections to the foregoing Report and Recommendation may

constitute a waiver of any appellate rights.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated:  April 17, 2013**